## Case No. 9,413.

### The MEMPHIS.

[Blatchf. Pr. Cas. 260.] 1

District Court, S. D. New York. Nov., 1862.[2]

PRIZE—BLOCKADE—CAPTURE — BY WHOM MADE— WHEN LIABLE TO CAPTURE.

1. Vessel and cargo condemned for an attempt to violate the blockade.

2. A seizure of a vessel for the violation of a blockade is lawful, if made by a national vessel, though not made by a vessel forming a part of the blockading force.

3. A vessel guilty of an unlawful trade with the enemy is liable to capture for the offence at any time during the voyage in which the offence is committed.

[The Memphis was captured July 31, 1862, and brought into the port of New York. Appraisers were appointed upon application of the district attorney before any claimant appeared, and without notice, and in fact before the libel was filed. After the libel was filed, the claimant appeared, and moved to vacate the order appointing appraisers, because of want of notice. The motion was overruled. Case No. 9,412. The case is now heard upon libel and proofs.]

1 [Reported by Samuel Blatchford, Esq.]
2 [Affirmed in Case No. 9,414.]

BETTS, District Judge. · The allegation in the libel, filed August 8, 1862, is, that this vessel and cargo were captured as lawful prize July 31, 1862, off Charleston Harbor, South Carolina, by the United States steamship Magnolia, and sent to this port for adjudication. Thomas S. Begbie and Peter Denny intervene as claimants of the vessel, alleging that they are British subjects, and owners of the vessel, which is a British vessel, and denying that she is lawful prize. The test oath of ownership is made by Donald Cruikshank, her master. Theodore Andrews, also a British subject, claims the cargo, and denies that it was lawful prize at the time of seizure. He makes the test oath of ownership. Both claims allege that the Magnolia, when she made the seizure, was not a vessel employed in enforcing the blockade of Charleston, but was casually ·passing on the ocean eighty-five miles from that place. This point was also made on the argument. Both of the above claims were filed September 2, 1862, by the same proctor. The vessel, by due course of interlocutory proceedings, was appraised and delivered to the government for the use of the United States, and was put into the public service before the final hearing of the cause, and public sale was also made of the cargo, as being perishable, and perishing in fact.

The evidence is ample and unquestioned that the vessel and cargo were, at the time of seizure, neutral property. The libellants claim that both are forfeitable, because the vessel had entered the port of Charleston on the preceding voyage, carrying with her articles contraband of war, and also in evasion of the blockade, well knowing at the time that the port was under actual blockade by the forces of the United States; and that the cargo seized on her was laden on board at Charleston, and brought out with intent to violate the blockade of that port then existing.

The testimony is clear, and was unquestioned on the trial, that the cargo on the outward voyage, landed at Charleston, consisted largely of articles contraband of war, and that the master and owners of the vessel and cargo well knew that the government of the United States claimed that the port of Charleston had been since May, 1861, held in a state of efficient blockade, and that an adequate force was stationed there to maintain the blockade. The documentary, notorious, and judicial evidence, connected with the points of law made by the defence, has been adverted to and detailed so repeatedly on those heads during the progress of this war, in the disposition of prize suits contested in the courts of the United States on captures made during the war, that it is superfluous to make a further recapitulation of these points until a judgment of the supreme court of the United States shall indicate that they are unsound and not warranted by law. I accordingly rule that the testimony taken in preparatorio in this suit satisfactorily establishes that the owners of the vessel and of her cargo had full notice and ample knowledge, when she was fitted out in England and sailed therefrom on this voyage, that a state of war existed between the United States and the seceded states; that Charleston was under an efficient blockade by the United States; and that the master and owners of the vessel on her outward and return voyage intended that the ingress and egress of the vessel to and from that port should be effected by an evasion of its blockade.

The point taken by the claimants, that the capture in this case is invalid because not made by a vessel actually stationed at the blockaded port, is not supported by any authority produced, nor does it comport with any reason upholding the authority of a belligerent to repress infractions of a blockade. The guilty vessel does not purge her offence by a successful act of fraud or deceit in preventing an arrest by the force supporting the blockade. Her capture is lawful, although the blockading force may be entirely absent from its port when the culpable act is committed. 1 Kent, Comm. 145. Any public vessel of the belligerent whose rights are violated may be the agent or minister to apprehend the offender, though, by dexterity or superior speed, the culpable actor may escape arrest at the time or place of the perpetration of the wrong. The only question which seems to be allowed in that respect is, whether the capturing vessel possessed the attributes of a national ship, so as to be entitled to participate in prize proceeds. The Charlotte, 5 C. Rob. Adm. 280; The Melomane, Id. 50. Yet, aside from any right to a participation in the prize proceeds, the power to capture an enemy vessel by any national force at sea seems irrefragable, whether the liability of the vessel attached arises from her positive hostile character, or from her violation of the belligerent rights of the captor. The Charlotte, 1 Dod. 220; The Donna Barbara, 2 Hagg. Adm. 373. The vessel and cargo in this case were captured in flagrante delicto; and after the undisguised avowal by the officers, on their examination in preparatorio, and the open contract on the shipping articles, all recognizing the culpability of both voyages, with the papers on board verifying the reward paid to the crew for accomplishing the illicit enterprise,. it is not without surprise that the court has witnessed a formal issue made by the claimants on the justness of the seizure of the vessel and cargo. The legal point which has been pertinaciously invoked by the defence, that the United States public ship which arrested the culprit, not being stationed off the port as one of the blockading squadron, had no authority to make the capture, has no foundation in American or English prize law. A vessel guilty of an unlawful trade with the enemy is liable to capture for the offense at any time during the voyage in which the of-

fence is committed. Hal. Int. Law, c. 21, § 12.

Decree of condemnation and forfeiture of the vessel and cargo ordered.

This decree was affirmed, on appeal, by the circuit court, July 17, 1863. [Case No. 9,414].

